**TENENBAUM LAW, LLC**

10 NORTH DEARBORN STREET
SUITE 400
CHICAGO, ILLINOIS 60602-4326
_____

J. SAMUEL TENENBAUM
sam@tenenbaumlaw.com

TELEPHONE: 312-624-8684
FACSIMILE: 312-619-5244

April 13, 2023

**FOIA CONFIDENTIAL TREATMENT REQUESTED**

*Via Email*
U.S. Securities and Exchange Commission
*ENF-CPU@sec.gov*

Austin Stephenson
stephensonau@sec.gov

      Re:    In the Matter of LGB Tokens (A-04010-A)
              Limited Response to Subpoena:

Dear Mr. Stephenson:

      As we discussed on our phone call, please find this initial voluntary response on behalf of Mr. James L. Koutoulas ("Mr. Koutoulas") as background and a limited summary as to key points as to why LGBcoin is not a security, and, accordingly, not subject to the jurisdiction of the U.S. Securities and Exchange Commission (the "Commission"). We are happy to have further discussions with you after you have had a chance to review.

      LGBcoin.io is a meme coin that was created as a joke based on one of Mr. Koutoulas's 2021 Halloween costumes. After going viral, it was used to support First Amendment-protected activities of advocating for free speech, against de-platforming, and against COVID-19 mandates. <u>LGBcoin.io has never had a public white paper, prospectus, SAFT, SAFE, or any other form of an investment contract.</u> Buyers have been told repeatedly that LGBcoins have no intrinsic value or functionality and that they should only spend what they can afford on the coin *See Exs. A1-A4*. Buyers were also told, repeatedly, there is no expectation of an ability to resell and that a portion of sales would be used to support charitable giving and politically-aligned candidates, *See letsgobrandon.com*. Mr. Koutoulas And, both LGBcoins and U.S. Dollars have been donated accordingly.

      Congress has never created a statute authorizing the Commission to conduct rulemaking activity with regard to meme coins nor has the Commission promulgated any such rules. The Commission has allowed other meme coins, such as DOGE and SHIB, to circulate without any restriction or any attempt to legally or even verbally classify them as securities by the Commission since they were minted in 2013 and 2020, respectively. The Commission, however, has created a great deal of uncertainty around cryptocurrency in general. Indeed, various high-ranking Commission officials have made periodic proclamations of their views as to what may-

or-may-not be a security, without any formal rulemaking activities to give clarity to market participants. Moreover, the Commission has not even issued any updated interpretative notices on the issue since 2019.

For example, William Hinman, a senior Commission official ("Mr. Hinman"), declared in a speech that a "token . . . all by itself is not a security, just as the orange groves in Howey were not."[1] Mr. Hinman further stated that ether—the native token of the Ethereum blockchain—also is not a security, and that a digital-asset security loses that status once "the network on which the token or coin is to function is sufficiently decentralized."[2] Separately, in 2019, a Commission division published a "Framework" that included Hinman's concept of decentralization as one of more than 60 factors that the industry should assess to determine whether a digital asset is (in the Commission's view) an "investment contract" under Howey.[3] The Framework further stated that it "d[id] not replace or supersede" the 2018 Hinman Speech, and encouraged continued reliance on it.[4] LGBcoin itself specifically exists on the ERC-20 subset of the decentralized Ethereum blockchain designated for digital collectibles.

The meme coin genre of cryptocurrencies is the digital equivalent of non-security collectibles, like baseball cards, Beanie Babies, and Air Jordans which are obviously not regulated by the Commission. Similarly, LGBcoins do not convey any claims of ownership in a company, interest payments from a note, cash flows of any kind, voting rights, or any other elements of securities. While certain individuals may choose to speculate on them on their own volition, that does not transform them into securities and the Commission lacks jurisdiction over them—just like baseball cards and Beanie Babies. And, like baseball cards and Beanie Babies—which buyers may choose to speculate over—the Commission cannot claim such jurisdiction without "clear congressional authorization,"[5] which is clearly lacking here.

Mr. Koutoulas is a well-credentialed[6] attorney with a background across commodities, securities, and cryptocurrency and has reasonably relied on his own analysis of LGBcoin's characteristics before agreeing to become involved with the coin, as well as receiving an independent legal opinion from outside counsel that LGBcoin is not a security *See* Ex. A. Mr. Koutoulas has loudly and sincerely advocated for the political objectives of the coin and acted in good faith and in the best interests of other coinholders. If statutes or regulatory rules creating

---

[1] William Hinman, Dir., Div. of Corp. Fin., SEC, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, (June 14, 2018), *available at* https://bit.ly/2l8t5dB
[2] *Id.*
[3] SEC, *Framework for "Investment Contract" Analysis of Digital Assets* (Apr. 3, 2019), *available at* https://bit.ly/2HXfEdZ.
[4] *Id.* at n.1.
[5] *West Virginia v. EPA,* 142 S. Ct. 2587, 2607-10 (2022).
[6] Mr. Koutoulas has been the CEO of a CFTC-registered Commodity Pool Operator and Commodity Trading Advisor for 15 years, has managed an award-winning cryptocurrency commodity pool since 2018, acted as lead customer counsel in the MF Global and PFG bankruptcies *pro bono* and loudly advocated on behalf of customers helping to accelerate the repayment of $7 billion in customer assets to 48,000 customers, served on the Board and Executive Committee of the National Futures Association where he became a Dodd-Frank Whistleblower against senior management whom he has alleged falsified board meeting minutes and extorted the CEO of a FCM from dropping from Vice Chairman consideration for corroborating Mr. Koutoulas's whistleblower case, and has worked *pro bono* with both the SEC and FBI to help them bring an enforcement action and indictment, respectively in two separate cases.

defined rules regarding meme coins existed, rest assured Mr. Koutoulas would follow them to the letter. But, since they do not, an attempt to engage in a burdensome investigation of him in the absence of such rules is not supported by the Constitutional prohibition of *ex post facto* laws nor by basic concepts of due process and fair notice. Still, Mr. Koutoulas has been factual and measured in his description of the coin as a digital collectible, advising that it has no intrinsic value, and to think of purchasing it like buying a political t-shirt, *See Ex. A5- Interviews.*

A civil lawsuit has been filed against Mr. Koutoulas and others regarding LGBcoin. It has had numerous defendants added and removed over the course of multiple complaints. For example, Candace Owens ("Ms. Owens") was originally named then subsequently dropped from the next complaint. It is important to note that even in that lawsuit which was dismissed once by the Court *sua sponte* and had 11 motions to dismiss filed by defendants (*See* Ex. D), that Plaintiffs make the judicial admission that their view is that LGBcoin is a digital commodity (and, thus, not a security). *See* DeFord v. Koutoulas Second Amended Complaint, ¶ 3, produced as Ex. B.

Additionally, the lead Plaintiff, De Ford, in the would-be class action has *admitted* that Mr. Koutoulas reasonably relied on NASCAR and that the decline in LGBcoin was attributable to NASCAR, not Mr. Koutoulas. Plaintiff further *admitted* Mr. Koutoulas had "brought the Conservative movement into the 21st century" with LGBcoin. Accordingly, Mr. Koutoulas has presented Plaintiff and his counsel with a Rule 11 letter for sanctions. S*ee* Ex. C. This motion for sanctions was filed with the court on March 25, 2023, and was denied without prejudice as 'premature.' Mr. Koutoulas plans to re-file for sanctions at the conclusion of the proceedings per the Court's order.

Shortly after Mr. Koutoulas filed his Rule 11 letter, the judge entered an order dismissing the second amended complaint as invalid. In that order, he does not seem to have addressed Plaintiff's judicial admission that LGBcoin is a commodity and allowed Plaintiff to replead *See* Ex. D1. The judge's dismissal order also says that the Second Amended Complaint was not a shotgun pleading, however, refers to non-party LGBcoin.io as "Defendant LGBcoin.io" 26 times. In the meantime, Erik Norden, who was an advisor to the LGBcoin Foundation, has been dismissed as a Defendant with prejudice and has filed his own Rule 11 Sanctions Motion and cites this key judicial admission as one of the grounds for relief *See* Ex. D2.

Mr. Koutoulas has signed and filed a sworn complaint against NASCAR on behalf of the Cayman Islands LetsGoBrandon.com Foundation, a non-profit to support LGBcoin and the associated political movement, on behalf of all LGBcoins. That Complaint does not include any securities law-based claims since LGBcoin is not a security. *See* Exhibits E and E1.

The Commission's Subpoena seeks documents related to former Congressman Madison Cawthorn ("Mr. Cawthorn"). The House Ethics Committee found that Mr. Cawthorn paid for his LGBcoin. Mr. Cawthorn purchased LGBcoin in December 2021 before NASCAR initially approved LGBcoin's sponsorship. Mr. Cawthorn committed to paying full market price for the LCBcoin as of a specific date in December 2021, and paid via check. Mr. Cawthorn refused to take a customary discount for a peer-to-peer purchase, citing House Ethics rules. *See Ex. F1*. Mr. Cawthorn was subjected to a probe by the House Ethics Committee which ultimately found that

there was no basis to pursue securities fraud or insider trading charges against Mr. Cawthorn. The Committee forced Mr. Cawthorn to make a charitable donation of approximately $14,000 in unrealized gains that he experienced between the time he committed to purchase and the time his check cleared, seemingly not understanding that Mr. Cawthorn would have also born any unrealized loss in the intervening time had the coin's aggregate worth declined. The Committee's Report is attached as Exhibit F. Mr. Cawthorn has not been named in any of the three De Ford Complaints.

The Commission also seeks discovery about another prominent conservative figure, Ms. Owens. Ms. Owens was not compensated for any promotion of LGBcoin and did so on her own volition. In fact, Ms. Owens has issued sworn statements subject to a protective order in the De Ford matter (from which she was dropped as Defendant). We have given her notice under the protective order and expect to hear back from her before the end of the month.

In conclusion, thank you for taking the time to review this non-exhaustive summary of why LGBcoin is not a security. Pursuant to our discussions, we are contemporaneously filing this letter and documents into the secure Commission's secure platform. We reserve all of our rights, and by voluntarily making this filing, we are not waiving any of our rights.

Very truly yours,

*[signature]*
J. Samuel Tenenbaum